**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

SEAN PATRICK TERRY, #202907

        Petitioner,

                                       Case No. 2:06-CV-10896
                                       Honorable Gerald E. Rosen
v.                                 Magistrate Judge R. Steven Whalen

MARY BERGHUIS,

        Respondent.

_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, Sean Patrick Terry, is a state inmate currently incarcerated at West Shoreline Correctional Facility in Muskegon, Michigan, where Mary Berghuis is the warden. Petitioner was convicted of armed robbery, Mich. Comp. Laws §750.529. He was sentenced to serve ten to twenty years in prison. *People v. Terry,* No: 252373, 2005 WL 1489486, *1 (Mich. Ct. App. June 23, 2005) (unpublished). Petitioner filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. §2254. For the reasons stated below, the Court will deny the petition.

### I. BACKGROUND

This case arises from David McCulloch, a cab driver, being assaulted and robbed after being summoned to pick up Petitioner from his Canton, Michigan residence. Mr. McCulloch testified that he was directed by Petitioner to take him to a location in Detroit and to the Metropolitan Airport. Although Petitioner admits that he called a cab for the purpose

of transporting him to make a drug purchase, he denies attacking and robbing Mr. McCulloch.

Petitioner testified that upon arriving at the Detroit destination and pulling into the driveway to wait for the seller, another car approached from behind and partially obstructed the cab from leaving. (Trial Tr., 9/23/03, pp. 129-30). Petitioner observed someone emerge from the vehicle, and recognized the car and the individual as being a "punk" and not the person that he was scheduled to meet for the drug purchase. *Id.* at 130. Petitioner then directed Mr. McCulloch to "take off." *Id.* Mr. McCulloch tried to leave. At that time Petitioner observed the individual approaching the car with what looked like a "a big old pry bar not a crow bar." *Id.* at 130-31. The individual smashed his window with the object. *Id.* Petitioner then proceeded to get out of car and run away. *Id.* Meanwhile, Mr. McCulloch sounded the horn, and ran into the garage door with his cab in an effort to escape. *Id.* at 131. After leaving the cab, Petitioner called his fiancee' by using a public phone because he left his cell phone in the back of the cab. *Id.* at 132. He told her to come pick him up. *Id.* Although Petitioner admits that he "was wondering what happened" to Mr. McCulloch, he was not going to report what had transpired to the police, since the incident occurred while Petitioner was attempting to purchase narcotics. *Id.* at 133.

Mr. McCulloch testified that, upon arriving at the Detroit destination, he was hit in the back of the head by Petitioner with a metal object and that there were no other individuals in the area. *Id.* at 26. Petitioner then demanded that Mr. McCulloch give him all of his money. *Id.* at 27. At that point Mr. McCulloch tried to put the car in reverse, hoping Petitioner would leave, but instead Petitioner hit Mr. McCulloch again, but this time on the side of his head. *Id.* at 26-27. Mr. McCulloch proceeded to turn around covering his head,

but Petitioner continued to hit Mr. McCulloch on his arms while he was trying to protect his head. *Id.* at 29-30. Petitioner got out of the vehicle and smashed the driver side window. *Id.* at 30-31. Mr. McCulloch left the vehicle from the passenger side and fell to the ground as he was bleeding, dizzy, could not see and was disoriented. *Id.* at 31. Petitioner continued to demand Mr. McCulloch's money as he lay on the ground. *Id.* He reached in his pocket, took out $200.00 and gave it to Petitioner. *Id.* at 33. Petitioner then took the keys from the cab and fled on foot. *Id.* at 34.

Petitioner filed an appeal of right and raised the following claims:

I. Defendant is entitled to a new trial where his counsel was ineffective and he was denied his Sixth Amendment right to counsel.

    A. Counsel refused to subpoena witnesses.

    B. Counsel failed to disclose a conflict of interest.

    C. Counsel failed to obtain discovery documents from the prosecutor.

    D. Counsel failed to object when defendant did not properly waive his right to counsel.

II. Defendant is entitled to a new trial where the prosecutor allowed a prosecution witness to testify falsely or avoid key questions.

III. Defendant is entitled to a new trial where his waiver of counsel was invalid.

IV. Defendant is entitled to a new trial where one entire day of his trial including essential pretrial motion hearings, is unavailable and was not adequately "reconstructed" during a hearing in the trial court.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Terry,* 2005 WL 1489486 at *1. Petitioner filed an application for leave to appeal with the Michigan Supreme Court and raised the same issues as those presented before the

Michigan Court of Appeals. *People v. Terry,* 474 Mich. 974; 707 N.W.2d 206 (2005) (Table). Petitioner's application for leave was denied in a standard order. *Id.* Petitioner now seeks a writ of habeas corpus challenging his convictions on the same grounds asserted in the Michigan appellate courts.

Respondent has filed an answer to the petition, asserting that the state appellate courts' decision in this matter was not contrary to or an objectively reasonable application of established federal or Supreme Court law.

## II. STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. §2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an

unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court explained the proper application of the "contrary to" clause:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . .

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

The Supreme Court held a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409.

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law . . . Under §2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Davis v. Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

Petitioner contends that trial counsel was ineffective as it relates to defense counsel's failure to: (1) subpoena witnesses; (2) disclose a conflict of interest; (3) obtain certain discovery documents; and (4) object when Petitioner did not properly waive his right to counsel. Before addressing each of Petitioner's claims individually, to show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court sets forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's

errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).

### 1. Failure to Subpoena Witnesses

First, Petitioner alleges that trial counsel was ineffective for failing to subpoena Sheriff Escoe and a defense lawyer, Mr. Cole, who were present at the line-up where Petitioner was identified by Mr. McCulloch as the person who committed the assault and robbery. The Michigan Court of Appeals considered and rejected Petitioner's claim and stated as follows:

First, the record does not establish that counsel refused to subpoena those

witnesses.  Second, even if counsel did refuse to subpoena those witnesses, the choice of which witnesses to call represents trial strategy and defendant has made no showing to overcome the presumption that this represents sound trial strategy.  Third, defendant has not demonstrated any prejudice - he has not made any offer of proof regarding what beneficial testimony those witnesses could have offered.

*People v. Terry,* 2005 WL 1489486 at *4.  The Court agrees.

The Sixth Circuit held that under some circumstances, the failure to interview or call a potential defense witness may amount to a violation of a criminal defendant's Sixth Amendment rights.  See e.g., *Towns v. Smith,* 395 F.3d 251, 260 (6th Cir. 2005).  However, complaints of ineffective assistance of counsel based upon "uncalled witnesses" are not favored in federal habeas corpus review because mere unsupported allegations about what testimony potential witnesses might have given are far too speculative.  See *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002).

To present a viable ineffective assistance of counsel claim based upon an alleged failure by counsel to call a witness to testify at trial, Petitioner must make an affirmative showing as to the identity and availability of the witness to testify, the details of what the uncalled witness would have testified to, and that the testimony of the uncalled witness would have produced a different more favorable result at trial.  *Malcum v. Burt,* 276 F.Supp.2d 664, 679 (E.D. Mich. 2003).  There must be some representation in the record or the petition of the contribution a missing witness could have made to assess, at a minimum, the prejudice prong of *Strickland.*  Although Petitioner has identified the witnesses he believes defense counsel should have called, he has failed to indicate the content of their purported testimony and how that offer of proof would have benefitted his case.  Therefore, Petitioner has failed to demonstrate that his trial attorney's performance

was deficient and that his trial was prejudiced by the absence of Sheriff Escoe and Mr. Cord's testimony.

### 2. Failure to Disclose a Conflict of Interest

Petitioner asserts that his attorney had a conflict of interest because he lived in a neighborhood in close proximity to where Petitioner has sold narcotics in the past. Therefore, trial counsel's failure to disclose that relationship constituted ineffective assistance of counsel. The Michigan Court of Appeals disagreed with Petitioner's argument and stated as follows:

> Defendant, however, has made no factual showing that such a conflict did, in fact, exist nor any showing that such a conflict in any way affected counsel's performance at trial.

*People v. Terry,* 2005 WL 1489486 at *4. The Court agrees. Upon the Court's independent review of the record, there is no substantiation of Petitioner's assertion, nor that the existence of such a fact regarding trial counsel's residence was prejudicial relative to the outcome of his case.

### 3. Failure to Obtain Discovery from the Prosecutor

Petitioner claims that trial counsel was ineffective for failing to request Mr. McCulloch's log book. It is Petitioner's position that the log book would have discredited Mr. McCulloch's testimony regarding where he was transporting Petitioner on the day of the robbery. The crux of Petitioner's defense is that Mr. McCulloch was complicit in the narcotics transaction and in order to cover himself at work, he told his dispatcher that he was going to the airport and not to the destination where the robbery took place. The log book would indicate such a call to the dispatcher. Petitioner's theory is that Mr.

McCulloch has accused him of the robbery in order to stay employed with the cab company.  Again, the Michigan Court of Appeals rejected Petitioner's claim as follows:

> The log book was, in fact, turned over to the defense during trial. Defendant however, fails to demonstrate any benefit to the defense from the log book. Accordingly, even assuming that defense counsel could have obtained it earlier and failed to do so, we see no possible prejudice to defendant arising from that failure.

*People v. Terry,* 2005 WL 1489486 at *5.  The Court agrees for two reasons.  First, on cross-examination, Mr. McCulloch admitted that he told his dispatcher that he was going to Detroit and to the airport because those were the destinations to which Mr. McCulloch was directed to drive by Petitioner.  (Trial Tr., 9/23/03, pg. 46).  Therefore, the purpose of introducing the log book was already served with Mr. McCulloch's testimony.  Second, Petitioner states that "[h]ad defense known prior to trial he could have deposed the dispatcher and had his testimony contradicting [the] victim's that Petitioner stated he was going to the airport and really it was victim who called it in." (Pet. at pg. 6).  The dispatcher could not have testified about where Petitioner told Mr. McCulloch to drive, as he was not there.  Therefore, even if it was Mr. McCulloch's idea to make up a story and tell his dispatcher that he was going to the airport, the dispatcher could not attest to that fact one way or the other.

### 4.  Failure to Object When Petitioner Did Not Properly Waive His Right To Counsel

Petitioner maintains that trial counsel was ineffective for allowing Petitioner to cross-examine Mr. McCulloch without objection. Petitioner claims that he wanted to cross-

examine Mr. McCulloch with the assistance of counsel because he did not feel his attorney was being proactive in his questioning of witnesses or in calling certain witnesses to testify. (Mot. Hr'g., 5/28/04, pp. 12-13). He wanted to pose follow-up questions to Mr. McCulloch after his trial attorney conducted cross-examination. *Id.* at 11-13. Petitioner also requested a "*Wade*[1] type hearing" in order to support his position that Mr. McCulloch's identification of Petitioner as the perpetrator was tainted or somehow improper. *Id.* at 11. However, Petitioner claims that he did not want to represent himself, but only wanted to supplement the cross-examination of Mr. McCulloch. *Id.* As a result of this request, Petitioner asserts that the trial court forced him to handle the testimony of Mr. McCulloch without the assistance of counsel and without the benefit of being informed of the perils of self-representation and the proper procedures which would effectuate a valid waiver of Petitioner's right to counsel. The Michigan Court of Appeals addressed the issue adversely to Petitioner's position as follows:

> First, we are unclear what prejudice could possibly have resulted from counsel's failure to object on the basis of the trial court inadequately handling the matter. If the trial court did, in fact, adequately handle the matter, then any such objection would be futile. On the other hand, if the trial court, as defendant seems to suggest, failed to follow any required procedures, then that would provide a basis for appellate relief. In short, because there could be no benefit to defendant for his counsel to object, then it follows that there can be no prejudice from the failure to do so.
>
> Second, because defendant does have an absolute constitutional right to self representation, we fail to see how an attorney has an obligation to stop his client from exercising that constitutional right. At most, the attorney may have an obligation to advise the client against doing so. That is, it would be similar to a client who, despite counsel's advice to the contrary, chooses to make a statement to the police. The attorney may advise against it, but

---

[1]*United States v. Wade,* 388 U.S. 218 (1967) (a defendant may have the right to a pretrial hearing to contest the validity of a line-up identification).

ultimately he cannot prevent his client from doing so. Therefore, in the case at bar, defendant's attorney may at most have had an obligation to advise defendant against handling the cross-examination of the victim himself. But such advice would naturally be off the record and, therefore, to establish such inadequate advice would have required a *Ginther* hearing in the trial court. In the absence of such a hearing, we cannot conclude that counsel inadequately advised defendant on this issue.

*People v. Terry,* 2005 WL 1489486 at *5 (internal citations omitted). The Court agrees.

The exchange between the trial judge and Petitioner was as follows:

The Court: All right. Let me – as best I can recall, Mr. Terry, at the onset of the proceedings when the case is called for trial you did indicate that you wanted to have the *Wade* type hearing. You wanted to examine the witnesses. You basically wanted self-representation at that time. You wanted to represent yourself.

The Defendant: Just the witness I want to question after –

The Court: Hold on a minute. Il let you do so. I denied your motion on the basis that I did not feel that it had been established that there was improper suggestion insofar as the identification issue is concerned. And that was the basis of my motion based upon what I heard.

Thereafter, when the matter was on the threshold of trial, again you indicated that you wanted to represent yourself. But when we got into it just very briefly, I can almost hear you say it to me, I don't know what I'm doing.

The Defendant: I did say it. I said that for the record. I said, "I don't know what I'm doing."

The Court: And with that I think that I indicated to you, and I don't recall my exact words obviously, that there are certain perils for a layperson in representing themselves at which point either by word or deed Mr. Glanda was invited, without any objection from, you to take over the defense.

When we get into trial, when the complaining witness is called by the people as a witness, you asked if you could examine or cross-examine that individual and you were given the full opportunity to do so. That's what I recall happening.

I do not believe at any time that you were denied your right to self-representation. I believe you were given to it every time you asked for it.

The Defendant: But I didn't agree with that neither. But I didn't want to represent myself, sir.

I remember saying this. I said I don't want to waive counsel. I just want to question the witness after my attorney. I didn't want to waive counsel.

The Court: Well I think that was true only as to the complainant. I don't recall as to the other witness.

\* \* \*

The Court: But as I have recited my recollection of what happened, I believe that is a true fact at no time was Mr. Terry denied the right of self-representation when he exercised it and he did have the assistance of counsel during the course of the proceedings.

The basic issue in this case was really one of identification, and it appears to me that that question's resolved on a credibility issue. The complainant in this case had a really extensive opportunity for observation. And he testified that the person who assaulted and robbed him unequivocally was Mr. Terry. Mr. Terry testifies he did not in fact do the robbery or do the assault.

And the bottom line in this case was who did they believe. Do they believe the prosecution's witness or does Mr. Terry create[ ] a reasonable doubt as to whether or not he is the perpetrator or the offense? And the jury found to the contrary.

(Mot. Hr'g., 5/28/04, pp. 11-15). Therefore, Petitioner was not forced to represent himself and waive his right to counsel relative to this aspect of the pre-trial proceedings or during the cross-examination of Mr. McCulloch.

Waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). For an accused person to waive his constitutional right to counsel, he

must 'knowingly and intelligently' forgo those relinquished benefits. Although

13

> a defendant need not himself have the skill and experience of a lawyer in
> order competently and intelligently to choose self-representation, he should
> be made aware of the dangers and disadvantages of self-representation, so
> that the record will establish that he 'knows what he is doing and his choice
> is made with eyes wide open.'

*Faretta v. California,* 422 U.S. 806, 835 (1975) (citations omitted).

"To ensure that a defendant's waiver is made with eyes wide open, a judge must thoroughly investigate the circumstances under which the waiver is made." *Fowler v. Collins,* 253 F.3d 244, 249 (6th Cir. 2001) citing *Von Motke v. Gillies,* 332 U.S. 708 (1948). Less rigorous warnings are required before trial than at trial "because, at that stage, 'the full dangers and disadvantages of self-representation . . . are less substantial and more obvious to an accused than they are at trial." *Iowa v. Tovar,* 541 U.S. 77, 90 (2004) quoting *Patterson v. Illinois,* 487 U.S. 285, 299 (1988).

The record is not clear regarding specifically how the trial court advised Petitioner of the dangers and disadvantages associated with self-representation, nor that the trial court specifically found that Petitioner voluntarily and intelligently waived his right to counsel because the transcript bearing out the trial court's directives is missing, *infra.* Therefore, the Court relies upon the settled record in its analysis of this issue.

Just prior to Petitioner's cross-examination of Mr. McCulloch, the trial judge stated to the jury:

> Under our constitution, a defendant in a criminal proceeding [ ], does have
> the right to represent himself. He also has the constitutional right to an
> attorney.
>
> In this particular case, Mr. Terry has requested the opportunity to cross-
> examine Mr. McCulloch.
>
> I have granted that request with a clear understanding that it is to be done in

> a professional orderly manner. He will have Mr. Glanda to seek advice or
> direction from, but Mr. Glanda will not be participating in the cross-
> examination. This is a decision that Mr. Terry has made.

(Trial Tr., 9/23/03, pp. 43-44). The record is clear that Petitioner requested to personally

question Mr. McCulloch and that the trial court gave some type of warning to Petitioner

regarding the negative aspects of self-representation even in this narrow circumstance.

However, upon review of the record referenced above, although Petitioner conducted the

cross-examination of Mr. McCulloch, he had the benefit of attorney Glanda as being his

standby counsel. *Id.* at 44.

Although standby counsel generally does not satisfy a defendant's Sixth Amendment

right to counsel, some courts have found that it can do so when counsel actively and

substantially assists the defendant. *King v. Bobby,* 433 F.3d 483, 490 (6th Cir.) comparing

*United States v. Oreye,* 263 F.3d 669, 672 (7th Cir. 2001) with *United States v. Davis,* 269

F.3d 514, 520 (5th Cir. 2001). Mr. Glanda represented Petitioner's interests during the pre-

trial stages and with the exception of cross-examining Mr. McCulloch, questioned all of the

witnesses at trial and conducted opening and closing arguments. However, with respect

to Petitioner's cross-examination of Mr. McCulloch, attorney Glanda interjected with

appropriate objections during his testimony. Mr. Glanda also referenced testimony given

by Mr. McCulloch during Petitioner's cross-examination during closing arguments.

Because attorney Glanda substantially and actively helped Petitioner before and during

trial, and was there to provide  assistance and guidance during Petitioner's cross-

examination of Mr. McCulloch, Petitioner was not denied his

constitutional right to effective assistance of counsel, thus not warranting an objection to

the trial court's handling of Petitioner's questioning of Mr. McCulloch.

15

Even if the Court were to find that Petitioner was representing himself during his questioning of the witness as opposed to being assisted by stand by counsel, the facts still indicate that Petitioner waived his right to counsel and was fully aware of the ramifications.

"Courts must indulge in every reasonable presumption against waiver of the right to counsel, whether at trial or during a critical stage of pretrial proceedings." *Brewer v. Williams,* 430 U.S. 387, 404 (1977). However, "the information a defendant must have to waive counsel intelligently will 'depend, in each case, upon the particular facts and circumstances surrounding that case.'" *Tovar,* 541 U.S. at 92, quoting *Johnson v. Zerbst,* 304 U.S. at 464; see also, *Wilson v. Parker,* 515 F.3d 682, 694-95 (6th Cir. 2008) (explaining that the event to which a court must prove into the elements of a valid waiver of counsel varies form case to case).

"[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands that nature of the right and how it would likely apply *in general* in the circumstances - even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz,* 536 U.S. 622, 629 (2002) (emphasis in original). A waiver is valid if it is "made with an appre[ciation] of the nature of the charges, the statutory offense included within them, the range of allowable punishments thereunder, possible defense to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Von Motke,* 332 U.S. at 724.

Due to the fact that the transcript which reflected the first day of testimony was missing, *infra*, and an effort was made to settle the record, the trial judge stated his recollection of what transpired relative to the issue of self-representation, his advisement

regarding the issue, and Petitioner did not dispute the trial court's findings. Therefore, any trial court omissions were excusable and a failure to object by defense counsel would not have compromised Petitioner's chances of being acquitted of the armed robbery charge. Habeas relief is therefore not warranted relative to this issue.

## B. Perjured Testimony Allowed by Prosecutor

Petitioner maintains that the prosecutor engaged in prosecutorial misconduct by permitting Mr. McCulloch to perjure himself, without correction, when he allowed him to testify that he (Mr. McCulloch) did not drive the cab into the garage door of the house when the prosecutor had a police report which stated Mr. McCulloch did so. The Michigan Court of Appeals addressed this issue as follows:

> But the mere fact that the victim's testimony was inconsistent with that of other witnesses, or even that the scenario painted by the victim might seem incredulous, does not establish that he testified falsely. At most, it establishes that he testified inaccurately. More to the point, however, it does not establish that the prosecutor knew that the witness was going to testify falsely. A prosecutor may not knowingly present false testimony to obtain a conviction. But the mere fact that a prosecution witness' testimony differs from that of another witness does not mean that the prosecutor must disbelieve its own witness. In short, this merely presents a question present in all cases, the determination of the credibility of a witness. And such determinations are [within] province of the jury. Apparently the jury either concluded that the victim was testifying accurately or that, to the extent the jury may have found part of the victim's testimony to be inaccurate, it did not adversely affect the victim's credibility on new issues.

*People v. Terry,* 2005 WL 1489486 at *5 (internal citations omitted). The Court agrees.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo,*

416 U.S. 637, 643-45 (1974); *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."), *abrogated on other grounds by Mackey v. Dutton,* 217 F.3d 399, 406 (6th Cir. 2000). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Anger v. Overberg,* 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997), quoting *Serra v. Michigan Department of Corrections* 4 F.3d 1348, 1355 (6th Cir. 1993).

When assessing the prosecutor's conduct, the court must first ask whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. The Sixth Circuit identified four factors to consider when analyzing conduct for flagranc*y*: "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Millender v. Adams,* 376 F.3d at 528, quoting *Boyle v. Million,* 201 F.3d 711, 717 (6th Cir. 2000).

To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a petitioner must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas

petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins,* 209 F.3d 486, 517-18 (6th Cir. 2000). Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe v. Bell,* 161 F.3d at 343; *Malcum v. Burt,* 276 F.Supp.2d at 684. Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum v. Burt,* 276 F.Supp.2d at 684.

Inconsistencies or contradictions regarding the garage door during Mr. McCulloch's testimony alone are insufficient to rise to the level of perjury. Moreover, Petitioner has not demonstrated how this alleged inconsistency with Mr. McCulloch's testimony is material to this case, is indisputably false, or that the prosecutor knew that it was false. Accordingly, the Court does not find habeas relief is warranted relative to this claim of prosecutorial misconduct.

### C. Petitioner's Waiver of Counsel Was Invalid

Petitioner claims that he is entitled to a new trial because the trial court erroneously determined that Petitioner waived his right to counsel when such a waiver was not desired by Petitioner, nor was it valid. This issue is addressed in Section A, *supra,* and for the reasons set forth above, habeas relief as to this claim is denied.

### D. Unavailable Transcript Warrants the Vacation of Petitioner's Conviction

Petitioner claims that because an "entire day of his trial, including essential pretrial

motion hearings, is unavailable and was not adequately 'reconstructed' during a hearing

in the trial court," his conviction should be vacated and a new trial granted.  The Michigan

Court of Appeals disagreed:

> [U]pon careful examination of this matter, we are not persuaded that defendant's right to appeal has, in fact, been denied or that he was otherwise denied due process.  It is agreed that the following events happened on the first day of trial: defendant brought a motion to suppress the line-up identification, a motion to compel discovery, the jury selection, a request for partial self-representation, and the prosecutor's opening statement.  Even accepting defendant's version of events, we do not believe that any winning argument for defendant could have arisen out of the first trial day.

*People v. Terry,* 2005 WL 1489486 at *2.  Petitioner claims that because the transcript from

the first day is missing, he was denied appellate review regarding five issues: (1) the

identification line-up; (2) discovery; (3) jury selection; (4) the prosecutor's opening

statement; and (5) self-representation.  As to each, the Michigan Court of Appeals stated

as follows:

> First, there is no dispute regarding the victim's identification of defendant: defendant admits to being in the victim's cab at the time of the robbery.  The dispute is not over whether the victim correctly identified defendant as his passenger, but whether the victim testified truthfully that he was attacked by his passenger rather than by a third-party as defendant alleges.  Second, there was a defense attorney (not defendant's trial counsel) present at both the photographic line-up and the corporeal line-up.  Appellate counsel could have consulted with both of those attorneys to determine if the attorneys noted any irregularity in the line-up proceedings that would have been raised at the hearing on the first day of trial.  Defendant has made no offer of proof regarding such an issue.  For those reasons, there is no basis for believing that a viable issue existed on the identification matter.
>
> \* \* \*
>
> [D]efendant  . . .  failed to preserve for appeal any issue related to the jury selection.  Therefore, even if there was a defect in the process, review was precluded.
>
> \* \* \*
>
> With respect to the discovery request, it appears that all matters requested were eventually supplied and, therefore, the discovery issue became moot.

\* \* \*

At the hearing [regarding the prosecutor's opening statement] [   ], the trial court indicated that any improper comments by the prosecutor during opening statement would have been cured by the trial court's general instructions to the jury that comments by attorneys are not evidence.  Absent any suggestion by defendant that more serious violations occurred, we are satisfied with the trial court's response to this matter.

\* \* \*

Indeed, it is overstating the case to say that defendant represented himself. At most, he served as his own co-counsel with respect to a single witness. Indeed, trial counsel was available to consult with defendant regarding the cross-examination of the victim and counsel even handled the objections that arose during the questioning of the witness.  The point being that this is not a case of a defendant waiving the right to be represented by a lawyer.

\* \* \*

[W]e conclude that there is no basis for believing that any further development of the record of the first day of trial would reveal any basis for reversing defendant's conviction on the issue of self-representation.

*Id.* at *2, *3.

As the Sixth Circuit has explained, "[l]ower courts, interpreting *Griffin*[2] and *Norvell*[3] in the context of cases where transcripts were simply missing have held that the [F]ourteenth [A]mendment does not require a word-by-word transcript where the production of such is impossible and the failure to procure the transcript is not invidiously motivated."

*Bransford v. Brown,* 806 F.2d 83, 86 , (6th Cir. 1986) (citations omitted). In such a case, "the absence of  . . .  the transcripts is not a *per se* denial of [the defendant's] due process right to a fair appeal."  *Id.* at 86.  Rather, "in order to demonstrate denial of a fair appeal, petitioner must show prejudice resulting from the missing transcript."  *Id.*  While this showing is difficult and therefore need not require absolute proof of prejudice, the defendant "must present something more than gross speculation that the transcripts were

---

[2]*Griffin v. Illinois,* 351 U.S. 12 (1956)

[3]*Norvell v. Illinois*, 373 U.S. 420 (1963)

requisite to a fair appeal." *Id.* The Sixth Circuit has reaffirmed this prejudice requirement. *Scott v. Elo,* 302 F.3d 598, 604-05 (6th Cir. 2002).

Here Petitioner has offered nothing to show that the reconstructed record was insufficient to protect his right to a fair appeal. The trial judge reconstructed the record pursuant to an established state court procedure, and based his findings on the recollections of the prosecutor, Petitioner's counsel and himself. *People v. Terry,* 2005 WL 1489486 at *2. Petitioner "is unable to indicate one specific error committed during the portions of the trial not included in the record." *Schwander v. Blackburn,* 750 F.2d 494, 498 (5th Cir. 1985). (internal quotations omitted). Therefore, Petitioner has failed to a make out a colorable need for a complete transcript or that he was prejudiced in his ability to pursue his appeal. See *Mayer v. Chicago,* 404 U.S. 189, 195 (1971). Accordingly, habeas relief is denied.

### E. Certificate of Appealability & *In Forma Pauperis*

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See Id.* at 90 (*quoting, Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997) ("[Because] 'a

district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,' the district judge is, at that point, often best able to determine whether to issue the COA.")

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must "show [ ] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further"" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims upon which habeas relief may be granted. Therefore, the court denies a certificate of appealability.

## IV. CONCLUSION

Petitioner has not established that he is in the State of Michigan custody in violation of the Constitution or laws of the United States.

Accordingly,

**IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" [Dkt. #1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is also **DENIED**.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated: December 17, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 17, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager